**FINCH, PRUYN & COMPANY, INC.,**
Petitioner/Respondent

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent/Petitioner**

**United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, Petitioner**

v.

**National Labor Relations Board, Respondent.**

Nos. 07–1036, 07–1080, 07–1085.

United States Court of Appeals, District of Columbia Circuit.

Sept. 25, 2008.

Rehearing En Banc Denied Dec. 5, 2008.

James R. Lavaute, Blitman & King, LLP, Syracuse, NY, for Petitioner.

Linda Dreeben, Deputy Assistant General Counsel, National Labor Relations Board, Washington, DC, Michael Todd Wallender, Law Offices of Michael T. Wallender, Albany, NY, for Respondent.

Before: SENTELLE, Chief Judge and HENDERSON and KAVANAUGH, Circuit Judges.

## JUDGMENT

PER CURIAM.

These cases were heard on the record from the National Labor Relations Board and on the briefs and arguments of counsel. It is

**ORDERED** that the petitions for review are denied and the cross-application for enforcement is granted.

This case commenced when two local unions, Local 18 and Local 155, affiliated with the Paper, Allied–Industrial, Chemical & Energy Workers International Union, AFL–CIO (Union) filed with the National Labor Relations Board (NLRB or Board) unfair labor practice charges against Finch, Pruyn & Company, Inc. (Finch) alleging that Finch had violated section 8(a)(1), (3) and (5) of the National Labor Relations Act (Act), 29 U.S.C. § 158(a)(1), (3), (5). Specifically, the Union alleged that Finch, a fine paper products manufacturer, prolonged an economic strike and thereby converted it to an unfair labor practices strike by closing its pulp mill and subcontracting for pulp without notice to, or bargaining with, the Union and that Finch failed to provide the Union with necessary information regarding the pulp subcontracts.[1] Joint Appendix (JA) at 14.

The Board referred the matter to an Administrative Law Judge (ALJ) who, after an eight-day hearing, found that Finch (1) violated section 8(a)(1) and (5) of the Act when it failed to accommodate the Union's request for information regarding the replacement workers' drug testing and physical exam data, (2) did not violate section 8(a)(1) and (5) of the Act when Finch refused to provide Local 18 with copies of pulp subcontracts and (3) did not violate section 8(a)(1) and (5) of the Act by subcontracting for pulp during the strike or by continuing to subcontract for pulp after the strike ended. Id. at 17–20. The NLRB disagreed with the ALJ's information request determinations, id. at 6–8, but upheld the ALJ's finding that Finch's subcontracting during and after the strike did not violate section 8(a)(5) and (1) of the Act, concluding that, although Finch's continued subcontracting after the strike was subject to mandatory bargaining,[2] the Union never requested bargaining on the issue, id. at 3–6.

Substantial evidence supports the Board's conclusion that Finch's pulp subcontracting during the strike was lawful and undertaken to continue its business operations and did not convert to an unfair labor practices strike. The NLRB specifically noted that Finch did not enter into any long-term pulp subcontract in the summer of 2001 but instead used a series

---

1. The Union also argued that because the strike converted, Finch was obligated to re-hire its Local 18 and Local 155 employees immediately after the strike ended. In view of our conclusion that the strike did not convert, we do not reach this issue. The Union's claim that Finch violated the Act when it unilaterally eliminated the PCC oiler position and failed to recall Bernard Palmer, the pre-strike PCC oiler, was settled before argument.

2. Finch's claim that the Board erred in determining that Finch's decision to continue subcontracting for pulp after the strike was subject to mandatory bargaining is not properly before us because Finch is not "aggrieved" by the Board's order on this issue. 29 U.S.C. § 160(f).

of "spot" contracts for pulp. JA at 4. Nor did Finch's CEO's testimony indicate that Finch decided to permanently subcontract at that time (or ever). *Id.* Relying on this evidence, as well as additional evidence in the record, *see, e.g.,* JA at 2–6, 277–83, 1391, we agree with the Board that Finch did not decide to subcontract for pulp "not to terminate at the expiration of the strike." *Land Air Delivery, Inc. v. NLRB,* 862 F.2d 354, 357 n. 2 (D.C.Cir. 1988).

Substantial evidence also supports the Board's finding that the Union waived bargaining on Finch's continued pulp subcontracting after the strike ended notwithstanding the Union's request for copies of the pulp subcontracts. The Union had actual notice as early as November 13, 2001 that Finch had decided to keep the pulp mill closed for the foreseeable future—and therefore to continue pulp subcontracting—but never requested that Finch bargain over the same, even after Finch entered into another pulp subcontract on December 18, 2001. JA at 5–6. We uphold the NLRB's determinations because they are supported by substantial evidence in the record. Moreover, the NLRB did not err in applying established law to the facts of the case. *Tradesmen Int'l, Inc. v. NLRB,* 275 F.3d 1137, 1141 (D.C.Cir.2002) (citing *Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers v. NLRB,* 41 F.3d 1532, 1536 (D.C.Cir. 1994)).

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R.App. P. 41(b); D.C.Cir. Rule 41.